UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| LORI ANN ARIAS,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>Defendant. | Case No. 16-cv-05619-RMI<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 23, 26 |

**INTRODUCTION**

Plaintiff, Lori Ann Arias, seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council. Thus, the decision is the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge. (Docs. 9 & 12). The court therefore may decide the parties' cross-motions for summary judgment. For the reasons stated below, the court will grant Plaintiff's motion for summary judgment, and will deny Defendant's motion for summary judgment.

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial

evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## SUMMARY OF RELEVANT EVIDENCE

Plaintiff was forty-two years of age at the time of the alleged disability onset date of May 30, 2012. (*See* Doc. 16, Administrative Record "AR" at 188). Plaintiff had completed a two-year college degree and had previously worked as a registered nurse.

### Treating Physicians

**Physical Health Issues:**

On July 29, 2011, Plaintiff visited her primary-care physicians at the Fortuna Family Medical Group ("FFMG") for follow-up treatment from her recent trip to the emergency room due to a rat bite. (AR at 366). During this visit, Lei Han, M.D., diagnosed Plaintiff with rat-bite fever, elevated blood pressure, and obesity, and noted that she suffered intermittent fevers as well as muscle and joint pain. (AR at 366-67). Two weeks later, on August 4, 2011, Plaintiff returned to FFMG for a follow-up visit with Ruben Brickhaus M.D., and reported that her condition had improved and that the muscle and joint pains had abated. (AR at 364-65). Plaintiff returned to FFMG two months later due to issues with her ear and her anemia. (AR at 362-63).

Ten months later, on August 3, 2012, Plaintiff returned to FFMG and complained that she had been experiencing worsening back pain, as well as numbness in her hands and feet, for the previous three months. (AR at 361). Dr. Lei Han noted that a neuropathy plan would be worked up, contemplated a neurology referral, and scheduled a follow-up visit for two months in the future while also prescribing pain medication. (*Id.*). Prior to the scheduled follow-up, Plaintiff returned to FFMG on September 12, 2012, to seek treatment for a sinus infection, during which

Dr. Lei Han's examination noted tender anterior cervical nodes in Plaintiff's neck. (AR at 359-60). The following month, on October 18, 2012, Plaintiff returned to FFMG and was examined by Dr. Brickhaus for back pain and joint pain. (AR at 358).

On November 27, 2012, Plaintiff once again visited FFMG for treatment of back pain and chronic pain in her joints. (AR at 356-57). Dr. Lei Han noted the history of her present illness as including the following facts: that Plaintiff had experienced significant changes in her joints since contracting rat-bite fever; that she had been on antibiotics continuously for nine months after the rat bite; that joint pain throughout her body was interfering with her daily activities; that her hands in particular were painful and swollen, and that it was both painful and difficult to open containers or the refrigerator; that the location of her former ankle replacement surgery with bone grafting had become particularly painful; that she has to sit and rest frequently due to pain; and that her manual dexterity was limited due to numbness, stiffness, and swelling of the hands. (*Id.*). Dr. Lei Han referred Plaintiff for consultation and treatment to the Arthritis Associates of Redding. (*Id.*).

On January 29, 2013, Plaintiff was treated by a specialist in infectious diseases, Uzi Selcer, M.D. (AR at 284-85). Dr. Selcer's physical exam yielded observations of multiple myofascial trigger points across Plaintiff's shoulders, neck, and back – suggestive of fibromyalgia. (*Id.*). In January, and again in February, of 2013, Plaintiff was treated by a specialist in rheumatology, Cynthia Rubio, M.D. (AR at 282-83, 293-94). Dr. Rubio's examinations yielded the following observations: widespread musculoskeletal symptoms including both large and small joints; moderate to severe degenerative joint disease in the L5-S1 facets (AR at 321); that Plaintiff's knees experienced pain on full extension; that her hips had a decreased degree of internal and external rotation; and that she had numerous observable myofascial trigger points. (*Id.*). Dr. Rubio's assessment was fibromyalgia. (AR at 282-83, 293-94). During her January 10, 2013, examination, Dr. Rubio's physical examination notes also described Plaintiff's appearance as "chronically ill" (AR at 294). As to Plaintiff's hands, Dr. Rubio observed a "sausagelike soft tissue swelling," which she diagnosed as either mixed connective tissue disorder, or possibly a non-rheumatologic disorder connected with Plaintiff's history of rat-bite fever. (AR at 323).

On March 5, 2013, having been recently diagnosed with fibromyalgia, Plaintiff returned to

FFMG, where Dr. Brickhaus treated her and prescribed pain medication for her chronic pain, and her myalgia and myositis; Dr. Brickhouse's progress note also expressed that Plaintiff's condition was still not dependable for full time work. (AR at 355). Two weeks later, on March 18, 2013, Plaintiff returned to FFMG for further treatment, at which time Dr. Lei Han noted that the physical exam yielded observable musculoskeletal pain. (AR at 353). Plaintiff returned to FFMG in April of 2013, and again in July of 2013, for treatment of joint and muscle pain; in the course of the latter visit, Dr. Brickhaus noted fibromyalgia in every joint, as well as insomnia and irritable bowel syndrome. (AR at 350).

For the remainder of 2013 and throughout 2014, Plaintiff frequently visited with her primary care physicians, and she was eventually referred to Connie Basch, M.D., for further treatment of her fibromyalgia in late 2014. (AR at 603-12). In April of 2015, Dr. Basch's assessment confirmed all previous diagnoses of fibromyalgia, reactive arthritis due to rat-bite fever, as well as assessing Plaintiff's IBS to be rooted in a suspected chronic candida infection, as well as a diagnosis of restless leg and sleep apnea being the root of Plaintiff's sleep disturbances. (AR at 622-23).

After the ALJ decision of April 24, 2015, but before the issuance of the Appeals Council's decision, Plaintiff's treating physician, Dr. Basch, certified Plaintiff's total and permanent disability, noting that Plaintiff's diagnoses would prevent her from engaging in any substantial gainful activity, and that no medical or surgical intervention would result in an improved diagnosis. (*See* Doc. 23 at 9). Dr. Basch's conclusion and supporting documentation (as well as other medical records from 2015 and 2016) were submitted to the Appeals Council with the stated effect of being informative of the medical records and testimony pertaining to the period of time following the disability onset date of May 30, 2012. (*Id*. at 9-10). The Appeals Council considered these materials, but disagreed with Plaintiff about their relevance to the disability period with the onset date of May 30, 2012. (AR at 2). It is undisputed that the Appeals Council omitted those records from the Administrative Record of this case. (*See* Doc. 23 at 9; *see also* Doc. 26 at 9).

Also, before the issuance of the ALJ decision, Plaintiff was treated by a chiropractor and an osteopath. On February 2, 2015, Plaintiff was treated by Brian Bellinger, D.C., who found the

4

following functional limitations: not able to sit for more than 20 minutes; can sit or stand or walk for less than 2 hours of an 8-hour workday; unscheduled breaks of 5 to 10 minutes per hour would be necessary due to muscle weakness and pain; legs must be elevated while seated; can be expected to occasionally lift up to 10 pounds, and rarely lift up to 20 pounds; can rarely twist, bend, crouch, or climb stairs; has significant limitations with reaching, handling, or fingering; and, that Plaintiff could be expected to be off-task or absent 25% or more of the time. (AR at 513-16). Dr. Bellinger's view of Plaintiff's functional limitations was in accord with those expressed in mid-2014 by Plaintiff's treating osteopath, Rachel Bailey, D.O. (AR at 524).

**Mental Health Issues:**

In October of 2014, Plaintiff was also diagnosed with major depressive disorder and anxiety disorder. (AR 547-48, 603-04). A consulting examination of Plaintiff by Sara Bowerman, Ph.D., found mild to moderate functional impairments in various aspects of life due to these conditions, as well as finding a Global Assessment of Functioning (GAF) score of 50. (AR at 392).

### Non-Treating Non-Examining Physician Opinions

The ALJ decision was also informed by the opinions of non-treating non-examining physicians who reviewed Plaintiff's medical records to date and rendered their opinions before the functioning limitations assessments of Plaintiff's treating physicians (Dr. Baily and Dr. Bellinger). The first of these reviews took place on October 23, 2013, by Dr. Amon. (AR at 84-93). Dr. Amon's review concluded that Plaintiff's osteoarthritis and allied disorders, as well as her degenerative disc disease, were both severe. (AR at 89). Dr. Amon also noted the absence of medical opinion evidence as to functioning limitations. (*Id.*). Dr. Amon then concluded that Plaintiff can occasionally lift or carry 20 pounds; that she can frequently lift or carry 10 pounds; that she can stand or walk with normal breaks for 4 hours; that she can sit with normal breaks for 6-hours; that her operation of hand or foot controls could be unlimited; that she could occasionally climb ramps or stairs; balance frequently, while stooping, crouching, kneeling, or crawling occasionally; that she had no limitations in reaching above her head; and that concentrated exposure to extreme heat or cold should be avoided. (AR at 89-91).

The second non-examining non-treating physician review took place on March 5, 2014, by Dr. Pong. (AR at 95-107). Dr. Pong's review of Plaintiff's medical records conceded that "[t]he evidence as a whole, both medical and non-medical, is not sufficient to support a decision on the claim." (AR at 99-100). Nevertheless, Dr. Pong concluded that Plaintiff's following three conditions were severe: osteoarthritis and allied disorders, fibromyalgia, and degenerative disc disease. (AR at 101). Dr. Pong's assessment of Plaintiff's functioning limitations was largely the same as Dr. Amon's. (AR 103-05).

**Hearing Testimony**

On February 3, 2015, the ALJ conducted a hearing and received testimony from Plaintiff, as well as a vocational expert. (AR at 51-83). Plaintiff testified that following her ankle replacement surgery in 2003, she found employment related to her field (nursing) but that would allow her to mostly work from home typing reports, coordinating patient-doctor visits, and occasionally meeting the patients at their physicians' offices. (AR at 57, 73-74). Plaintiff also related that in the months following her ordeal with rat-bite fever in 2011 she began to experience debilitating symptoms in various joints throughout her body, which led to the diagnoses on record. (AR at 58-60). Plaintiff testified that she could no longer stand for as much as 15 minutes at a time, noting that she no longer participates in many of her children's extracurricular activities (such as birthday parties and dances) due to that limitation. (AR at 62). Additionally, while seated, Plaintiff testified that her legs must be significantly elevated to alleviate pain. (AR at 63). Plaintiff also noted that due to pain and swelling in her hands, she is no longer able to write, type at a keyboard, or send text messages with a phone. (AR at 64-65).

Plaintiff's husband has since taken over certain household chores such as doing the major shopping and preparing most meals. (AR at 65-66). Plaintiff's left hand is less affected by the swelling and pain than her right hand, thus, Plaintiff would still do certain things around the house, such as putting dishes into the dishwasher (if she could lift them with one hand), or folding laundry (if it was small enough to fold with one hand). (AR at 67). As to any emotional or mental impairments in daily functioning, Plaintiff testified that her chronic pain has caused her to largely withdraw from the society of her friends; to seek marriage counseling due to thoughts that her

husband "deserved better than her," and to endure daily crying spells due to the pain and the depression. (AR at 68-69).

The ALJ also heard from a vocational expert ("VE") who had no previous contact with Plaintiff, and who had reviewed the record and heard Plaintiff's testimony. (AR at 72-83). The VE testified, in response to the ALJ's pointed inquiry, that Plaintiff could perform work as a nurse consultant – assuming that Plaintiff could perform light work with 4 hours of standing and walking in an 8-hour day, as well as being off-task 5% of the time. (AR at 74-75). However, the VE did concede that most "sedentary work," such as nurse consultant, would require frequent use of the hands. (AR at 76).

## THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability (*id*. § 416.920(a)(3)), and must use a five-step sequential evaluation to determine whether the claimant is disabled (*id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation. (*See* AR at 32-45).

At Step One, the claimant bears the burden of showing she has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *Id*. The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (AR at 33).

At Step Two, the claimant bears the burden of showing that she has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no

7

more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered the following severe impairments: fibromyalgia, degenerative disc disease of the lumbar spine, inflammatory osteoarthritis / reactive arthritis, obesity, cervical degenerative disc disease, history of ankle surgery and multiple left-knee surgeries, and major depressive disorder / anxiety disorder. (AR at 33-34).

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing her impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *Id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (AR at 34-36). Next, the ALJ determined that Plaintiff retained the RFC "to perform light work" with several physical and environmental limitations. (AR at 36-44).

At Step Four, the ALJ determined that Plaintiff was not capable of performing her past relevant work as an office nurse, a registered nurse, or a nurse consultant. (AR at 44).

At Step Five, the ALJ concluded that based on the testimony of the VE, and the ALJ's formulation of the RFC, that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy; and thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from May 2012, through the date of the decision. (AR at 44-45).

**ISSUESS PRESENTED**

Plaintiff presents three issues for this court's review of the ALJ's decision: (i) whether remand is required due to new evidence that was submitted to, and considered by, the Appeal Council but was not made part of the administrative record; (ii) whether the ALJ decision failed to give appropriate weight to the opinion of the treating physicians in determining Plaintiff's residual functioning capacity; and, (iii) whether the ALJ decision failed to provide adequate restrictions as

to concentration, persistence, and pace when determining Plaintiff's residual functioning capacity.

## DISCUSSION

**Issue-I:**

Plaintiff first contends that remand is required due to the fact that new evidence was submitted to, and considered by, the Appeal Council but was not made part of the administrative record.

Before the issuance of the Appeals Council's decision, Plaintiff's treating physician, Dr. Basch, certified Plaintiff's total and permanent disability, noting that Plaintiff's diagnoses would prevent her from engaging in any substantial gainful activity, and that no medical or surgical intervention would result in an improved diagnosis. (*See* Doc. 23 at 9). Dr. Basch's conclusion and supporting documentation were submitted to the Appeals Council with the stated purpose of being informative of the medical records and testimony pertaining to the period of time following the disability onset date of May 30, 2012. (*Id*. at 9-10). The Appeals Council considered these materials, but found that they were not relevant to the disability period in question. (AR at 2).

Although the Appeals Council "declined to review" the decision of the ALJ, it reached this decision after considering the case on the merits, examining the entire record, including the additional material submitted by Plaintiff; and, it concluded that the ALJ's decision was proper and that the new evidence, "is about a later time." (AR at 2). It is the law of this Circuit that such evidence must be considered by district courts in their §405(g) substantial evidence review of the final decision of the Commissioner. *See Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993) (citing *Bates v. Sullivan*, 894 F.2d 1059, 1063-64 (9th Cir. 1990) (reviewing *de novo* the Appeals Council's refusal to review the decision of the ALJ where the claimant presented new material to the Appeals Council after the hearing before the ALJ)).

Thus, "when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of SSA*, 682 F.3d 1157, 1163 (9th Cir. 2012) ("The district court erred when it refused to consider the new evidence that Brewes submitted to the Appeals Council and that the

Council considered in denying Brewes' request for review.").

The Commissioner argues (Doc. 26 at 9) that under *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001), in order to justify a remand, a plaintiff must show that the new evidence was material to determining her disability, and that good cause existed for having failed to produce that evidence earlier. However, *Massanari* did not address the situation at hand; instead, that case was concerned with the question of whether the *substance* of the new evidence (that was in fact before the court) might itself justify remand for reconsideration by the ALJ. *See id*.

Because the court determines that remand is appropriate as to Issue-II, the court need not determine whether remand, or an order to supplement the record, is appropriate here. Instead, on remand, Plaintiff can present this material to the ALJ for consideration in the new RFC determination.

**Issues-II and III:**

In her second issue, Plaintiff contends that the ALJ's decision failed to give appropriate weight to the opinion of the treating physicians in determining the RFC. In her third issue, Plaintiff argues that the decision failed to provide adequate restrictions as to concentration, persistence, and pace when determining the RFC.

As stated above, following the sequential evaluation process, after making a Step Three determination, the ALJ formulates the RFC and then applies that RFC to the Step Four analysis. The challenge raised by Plaintiff in her second issue (failure to give appropriate weight to the opinion of the treating physicians) is a challenge to the formulation of the RFC. Because the court finds error here, warranting remand, the court does not find it necessary to address Plaintiff's third issue as to the adequacy of the RFC's restrictions as to concentration, persistence, and pace.

The ALJ's formulation of the RFC in this case was erroneous because it does not have a substantial basis in the record. The formulation of the RFC was ostensibly based on the medical opinions of four physicians. Two of those opinions came from non-treating non-examining physicians, and they predated the contrary opinions of Plaintiff's two treating physicians. Further, the ALJ's formulation of the RFC tracked none of those opinions exactly and appears to have been derived independently by slightly modifying the assessment of the non-examining non-treating

10

physicians.

On October 23, 2013, and on March 5, 2014, two consulting physicians contracted by the Commissioner reviewed Plaintiff's medical records to date and concluded that Plaintiff can occasionally lift or carry 20 pounds; that she can frequently lift or carry 10 pounds; that she can stand or walk with normal breaks for 4 hours; that she can sit with normal breaks for 6-hours; that her operation of hand or foot controls could be unlimited; that she could occasionally climb ramps or stairs; balance frequently, while stooping, crouching, kneeling, or crawling occasionally; that she had no limitations in reaching above her head; and that concentrated exposure to extreme heat or cold should be avoided. (see AR at 89-91, 103-105). However, one consultant noted the absence of medical opinion evidence (AR at 89), and the other noted that "[t]he evidence as a whole, both medical and non-medical, is not sufficient to support a decision on the claim" (AR at 99-100).

Well after the consultant physicians had conducted their reviews of Plaintiff's medical records in June of 2014 and February of 2015, Plaintiff's treating physicians found the following functioning limitations: not able to sit for more than 20 minutes; can sit or stand or walk for less than 2 hours of an 8-hour workday; unscheduled breaks of 5 to 10 minutes per hour would be necessary due to muscle weakness and pain; legs must be elevated while seated; can be expected to occasionally lift up to 10 pounds, and rarely up to 20 pounds; can rarely twist, bend, crouch, or climb stairs; has significant limitations with reaching, handling, or fingering; and, that Plaintiff could be expected to be off task or absent 25% or more of the time. (AR at 513-16, 524).

The ALJ decision concluded that the medical opinions of Plaintiff's treating physicians (with respect to functioning limitations) would be given "little weight" due to the ALJ's conclusion that the treating physicians' opinions were "not supported by their own treatment notes." (AR at 42). The ALJ decision does not provide any specific detail about *which* treatment notes might be inconsistent with the treating physicians' functioning limitations opinions, or *how* those notes might undercut the doctors' opinions. (*See* AR at 42). Elsewhere in the decision, the ALJ does note that Plaintiff had reported to one of these physicians on one occasion that she was "doing well" with her medication for her painful joints; or that the other physician once observed

11

her to be "well appearing, well nourished, [and] in no distress." (AR at 38).

The ALJ's decision added that the treating physicians' opinions were due to be given little weight also because the "longitudinal medical evidence of record does not support such restrictive limitations." (AR at 42). By way of explanation in this regard, the ALJ decision noted that "multiple examinations found normal range of motion, normal gait, normal strength, normal reflexes, and no redness/swelling to the joints, no deformities or edema of the extremities." (AR at 42). However, the decision does not elaborate as to *which* examinations, or *when* those examinations might have been conducted during course of the progression of Plaintiff's various ailments.

On the other hand, the ALJ's decision opted to "afford significant weight to the State agency consultants' physical assessments." (AR at 43). The ALJ wholly adopted their assessment of Plaintiff's functioning limitations, adding the limitation that Plaintiff's legs be elevated while sitting. (*Id.*). Thus, the ALJ concluded that Plaintiff was capable of performing light work with the following restrictions: that Plaintiff can occasionally lift or carry up to 20 pounds; that she can frequently lift or carry up to 10 pounds; that she can stand or walk with normal breaks for 4 hours; that she can sit with normal breaks for 6-hours; that her operation of hand or foot controls could be unlimited; that she could occasionally climb ramps or stairs, or balance frequently; that she could engage in stooping, crouching, kneeling, or crawling occasionally; that she had no limitations in reaching above her head; that she be permitted to elevate her legs while sitting; and, that concentrated exposure to extreme heat or cold should be avoided. (AR at 43-44).

Plaintiff assigns error to the ALJ's decision to give little weight to the opinions of her treating physicians, while affording controlling weight to the opinions of consulting non-treating non-examining physicians that predated the opinions of Plaintiff's treating physicians. The Commissioner responds by searching the medical records for indications in the notes of Plaintiff's treating physicians that might serve to justify the ALJ's decision to afford those opinions little weight. (*See* Doc. 26 at 5). Plaintiff replies to the effect that such post-hoc arguments can not be the basis for upholding an ALJ decision, and that such decisions must be reviewed based the reasoning and factual findings offered by the ALJ. (Doc. 29 at 2) (citing *Bray v. Comm'r of SSA*,

12

554 F.3d 1219, 1225-26 (9th Cir. 2009). The court agrees with Plaintiff and finds that such post-hoc justifications for an ALJ's conclusion would constitute an invitation to the court to engage in speculative exercises, or worse yet, such efforts would invite this court to supplement the ALJ's reasoning. The court declines the invitation to engage in either.

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . [T]he Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician . . . [T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons . . ." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The reason that an ALJ must accord special weight to a treating physician's opinion is that a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). If a treating source's opinions on the issues of the nature and severity of a claimant's impairments are well-supported by medically acceptable clinical and laboratory diagnostic techniques, and are not inconsistent with other substantial evidence in the case record, the ALJ must give it "controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

If a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. However, if the treating physician's opinion is contradicted by another physician, such as an examining physician, the ALJ may reject the treating physician's opinion by providing specific, legitimate reasons, supported by substantial evidence in the record. *Id.* at 830-31; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Where a treating physician's opinion is contradicted by an examining professional's opinion, the Commissioner may resolve the conflict by relying on the examining physician's opinion if the examining physician's opinion is supported by different, independent clinical findings. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Orn*, 495 F.3d at 632; *see also Bayliss*, 427 F.3d at 1216 (if an examining physician's opinion is contradicted by another physician's opinion, an ALJ must provide specific and

13

legitimate reasons to reject it). However, for present purposes, it is important to note that "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician" — such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record. *Lester*, 81 F.3d at 830-31; *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600 (9th Cir. 1999).

Here, the ALJ rejected the matching functional capacity opinions of Plaintiff's treating physicians (rendered in June of 2014, and February of 2015) in favor of the ALJ's modified version of the opinions of non-examining non-treating consultant physicians (rendered previously in October of 2013, and in March of 2014). To compound the error, the consulting physicians noted, respectively, the absence of medical opinion evidence in the record as to functional limitations (AR at 89); and, that "[t]he evidence as a whole, both medical and non-medical, is not sufficient to support a decision on the claim" (AR at 99-100). The differences between the limitations opined by the treating physicians and the agency consultants were significant. Plaintiff's treating physicians opined that she would be off-task or absent 25% or more; that she could sit for up to 20 minutes; that she could stand or walk less than 2 hours in an 8-hour work day; and that she had significant limitations with reaching and with the use of her hands. On the other hand, the non-examining consultants had earlier opined that she could sit 6 hours, stand or walk for 4 hours, and that her operation of hand and foot controls could be unlimited. The non-examining physicians' opinions were silent as to any percentage of the time that Plaintiff might be off-task or absent from work, and so the ALJ added a 5% off-task allowance to the RFC, as well as a provision for elevated feet while working in a seated posture.

The ALJ's articulated basis for giving "little weight" to the functioning limitations capacity opinions of Plaintiff's treating physicians were that the opinions were contradicted by the physicians' own notes, and that the longitudinal medical record did not support those opinions. As stated previously, the ALJ did not articulate *which* treatment notes might be inconsistent, or *how* they would be inconsistent. A mere mention, elsewhere in the ALJ decision, to the effect that one treatment note once provided that Plaintiff was observed as "well appearing, well nourished, [and]

14

in no distress," (*see* AR at 38) is not sufficient. The court finds that this justification for rejecting the functioning limitations capacity opinions of Plaintiff's treating physicians falls short of the standard — "specific, legitimate reasons, supported by substantial evidence in the record" — for rejecting the contradicted opinion of a treating physician (assuming that previously occurring consultant opinions "contradicted" the later-rendered opinions of the treating physicians). *See Lester*, 81 F.3d at 830-31.

The ALJ also premised her rejection of the treating physicians' opinion as to functioning capacity based on the ALJ's view that the "longitudinal medical evidence of record does not support such restrictive limitations." (AR at 38). The court disagrees, and finds that the functional capacity limitations opinions expressed by the non-examining consultants (and adopted by the ALJ) are not supported by substantial evidence in the record – particularly in light of the fact that those reviews took place before the treating physicians expressed their opinions; and also because one non-examining physician suggested that the record was insufficient to render a decision on the claim, and the other noted the absence of medical opinion from a treating or examining physician. Further, this court has reviewed, and summarized (*supra* at 2-7), the longitudinal medical record and finds that it presents a picture wholly consistent with the functioning limitations expressed by Plaintiff's treating physicians, and that the record does not manifest "substantial evidence" to support the RFC as it was formulated by the ALJ. Or, looking at it another way, the ALJ erred by considering the matching functional limitations opinions of two non-examining consultants as constituting, by itself, "substantial evidence" that justified the RFC as formulated, as well as justification for rejecting the later-rendered opinions of Plaintiff's treating physicians, without such being consistent with and supported by other independent evidence in the record. *See Lester*, 81 F.3d at 830-31; and, *Morgan*, 169 F.3d at 600.

Accordingly, because it was error for the ALJ to reject the functioning limitations opinions of Plaintiff's treating physicians in favor of the previously rendered opinions of non-examining consultants, the court remands the case for further proceedings consistent with this order.

## CONCLUSION

For the reasons stated above, the court GRANTS Plaintiff's motion for summary

judgment, and DENIES Defendant's motion for summary judgment. The court hereby REMANDS this matter for further proceedings in accordance with this order.

A separate judgment will issue.

**IT IS SO ORDERED.**

Dated: January 31, 2018

_____
ROBERT M ILLMAN
United States Magistrate Judge